# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

United State of America,

        v.

Kevin Honesty.

1:07-cr-00155-PLF

## RESPONDENT, CHRISTOPHER IVINS' RESPONSE TO DEFENDANT HONESTY'S MOTION TO HOLD CHRISTOPHER IVINS IN CONTEMPT FOR HIS WILFUL (SIC) VIOLATION OF THE JULY 18, 2007 ORDER PLACING DEFENDANT AT THE CENTRAL TREATMENT FACILITY

Christopher Ivins, through counsel, hereby request this Court enter an Order denying Defendant Honesty's "Motion to Hold Christopher Ivins in Contempt for his Wilful (sic) Violation of the July 18, 2007 Order Placing Defendant at the Central Treatment Facility." This Motion is supported by the accompanying Statement of Points and Authorities.

Respectfully submitted,

Dated:  September 26, 2007

By  s/Jennifer L. Holsman
    Daniel P. Struck, DC Bar No. CO0037
    Jennifer L. Holsman, DC Bar No. 495296
    JONES, SKELTON & HOCHULI, P.L.C.
    2901 North Central Avenue, Suite 800
    Phoenix, Arizona  85012
    Telephone:   (602) 263-1700
    Facsimile:    (602) 263-1784

    Paul J. Maloney, DC Bar No. 362533
    Mariana D. Bravo, DC Bar No. 473809
    CARR MALONEY, P.C.
    1615 L Street, N.W., Suite 500
    Washington, DC   20036
    Telephone:      (202) 310-5500
    Facsimile:       (202) 310-5555

    Attorneys for Respondent, *Christopher Ivins*

1740110.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

United States of America,

v.

Kevin Honesty.

1:07-cr-00155-PLF

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONDENT, CHRISTOPHER IVINS' RESPONSE TO DEFENDANT HONESTY'S MOTION TO HOLD CHRISTOPHER IVINS IN CONTEMPT FOR HIS WILFUL (SIC) VIOLATION OF THE JULY 18, 2007 ORDER PLACING DEFENDANT AT THE CENTRAL TREATMENT FACILITY**

Respondent, Christopher Ivins, through counsel, submits this Response to Defendant Honesty's "Motion to Hold Christopher Ivins in Contempt for His Wilful (sic) Violation of the July 18, 2007 Order Placing Defendant at the Central Treatment Facility." This Response is supported by the accompanying Statement of Points and Authorities.

I.        **FACTUAL BACKGROUND.**

On July 7, 2007, inmate Honesty went through intake at the Central Detention Facility (commonly known as the "D.C. Jail") after being convicted of armed bank robbery. During that process, inmate Honesty requested to be placed in general population and claimed not to be "separated from anyone, nor do I have any known enemies at the D.C. Detention Facility." (*See* Affidavit of Donald H. Paul (hereinafter "Paul Aff."), attached hereto as Exhibit 1, at ¶ 18).[1]

---

[1] Mr. Sidell's assertion in paragraph 1 of his Motion that inmate Honesty, could "not be housed at the D.C. Jail/Central Detention Facility for security reasons resulting from several people housed at the D.C. Jail" is false. During the intake process on July 7, 2007, the DCDC Case Manager found multiple separatees from inmate Honesty's 2004 incarceration, although none of them were currently detained at the Central Detention Facility. (*See* Paul Aff. at ¶ 18). Thus, there is no evidence in inmate Honesty's institutional file from either the District of Columbia or Corrections Corporation of America that inmate Honesty was in need of protective custody at the Central Detention Facility either before or after July 18, 2007. Further, attached as exhibits to this motion are express rejections of any need for protective custody by inmate Honesty. (*See* Paul Aff. at pp. 15-16, and attachments cited therein).

- 2 -

On July 18, 2007, the Court signed an Order placing inmate Honesty at Correctional Treatment Facility (hereinafter "CTF"). (*See* Order, attached as Exhibit 2). On July 24, 2007, Defendant Honesty was transferred to the CTF and went through all intake processing and classification procedures. (*See* Paul Aff., at ¶ 15.). During the intake process, inmate Honesty advised Intake Case Manager, Wanda Garrett, that there were no separation orders advising CTF that he must be kept separate from any other inmate. (*Id.*). Subsequently, on July 26 and August 2, 2007, Defendant Honesty waived protective custody. (*Id.* at ¶¶ 16 and 17).

On July 31, 2007 at approximately 2:00 p.m., Defendant Honesty's counsel, Gary M. Sidell, came to the facility to interview inmate Honesty. (*See id.*, at ¶ 5). Mr. Sidell brought a large, shoulder-style attaché filled with several items, which he wished to take to the visitation room. (*Id.* at ¶ 5). Officer Cooley subsequently searched Mr. Sidell's attaché to ensure that it contained no prohibited items pursuant to facility visitation policy. (*Id.* at ¶ 6). During Officer Cooley's search, she located a prohibited novel and magazine. (*Id.*) Officer Cooley then advised Mr. Sidell that those items were not permitted during the visit, and that he would have to put them in one of the visitation lockers. (*Id.*). Mr. Sidell reacted rashly by snatching the prohibited materials away from Officer Cooley. (*Id.*).

Following the search, and so as to not unnecessarily delay Mr. Sidell's visit, Officer Cooley collected his government-issued photographic identification, and provided him with a CTF Visitor's badge. (*Id.* at ¶ 7). During this time, Mr. Sidell continued to berate and challenge Officer Cooley regarding her determination that the magazine was a prohibited item. (*Id.* at ¶ 8). At Mr. Sidell's invitation, Officer Cooley flipped through the magazine and pointed out where it was clearly of a non-legal nature and the items it contained, either as inserts, pictures, advertisements and articles which constitute items prohibited inside CTF. (*Id.* at ¶ 8).

Mr. Sidell however, refused to put the prohibited materials into a locker. (*Id*. at ¶ 8). In response, Officer Cooley called her supervisor, Mr. of Security Christopher Ivins, and alerted him to the problem. (*Id*. at ¶ 8).

While waiting for Mr. Ivins to respond to the visitation reception area, Mr. Sidell remained standing at the visitation officer's kiosk, despite the opportunity to sit in the reception area. (*Id*. at ¶ 9). Mr. Sidell's decision to stand at the visitation officer's kiosk, blocked access to the kiosk to several other attorneys, who believed that Mr. Sidell was ahead of them to be processed for a visit. (*Id*. at ¶ 9). While blocking access to the kiosk, Mr. Sidell proceeded to leaf through his magazine. (*Id*. at ¶ 9). After realizing that Mr. Sidell was merely blocking their way, they came around to the other side of the kiosk to sign-in. (*Id*. at ¶ 9).

When Mr. Ivins responded to the visitation area approximately five minutes later, he began by introducing himself to Mr. Sidell and shook his hand. (*Id*. at ¶ 10). Mr. Sidell continued to behave in an agitated manner, grew increasingly loud, and brandished the magazine. (*Id*. at ¶ 10). In reviewing Mr. Sidell's possessions, Mr. Ivins observed that he had a romance novel and a magazine, none of which are "legal materials," and thus are prohibited during legal visits. (*See* Affidavit of Christopher Ivins (hereinafter "Ivins Aff."), attached hereto as Exhibit 3, at ¶ 10). After Mr. Sidell was again asked to place his non-legal materials in a locker, he became "argumentative and disruptive." (*Id*.). As a result of Mr. Sidell's behavior, he was asked to leave the facility. (*Id*.). Thereafter, Mr. Sidell threatened Mr. Ivins by stating that the decision to ask him to place his non-legal materials in a locker was, "making a decision affecting [Mr. Ivins] career." After being advised that the Metropolitan Police Department was going to be called, Mr. Sidell finally left the facility. (*Id*.). Mr. Sidell's behavior was captured on videotape using CTF's WatchDog surveillance system. (*See* Paul Aff. at ¶ 4).

At 2:27 p.m. that same day, Mr. Ivins sent an email to Warden Caulfield and other CTF personnel describing Mr. Sidell's abusive and disruptive behavior. (Ivins Aff. at ¶ 11). Mr.

Ivins also recommended that Mr. Sidell be prohibited from CTF for safety and security reasons. (*Id*.).

On August 1, 2007, Mr. Sidell returned back to the facility and requested a visit with inmate Honesty. (*Id*. at ¶ 13). As a result of the Warden's decision to prohibit Mr. Sidell from entering the facility based on his prior abusive and disruptive behavior, Mr. Sidell's request to visit inmate Honesty was denied. (*Id*. at ¶ 12-13).

At approximately 12:35 p.m. on August 1, Warden Caulfield sent email correspondence to Vera Lightner, Director of Case Management Services, advising that Mr. Sidell was prohibited from entering CTF and asking if there was any reason inmate Honesty could not be transferred out of the facility as there was nothing in the CTF file prohibiting the move. (*Id*. at ¶ 14).

At 1:05 P.M., Warden Caulfield received a response from the Acting Contract Monitor, Deborah A. Miller, advising him that Ms. Lightner was unavailable, and suggested that he consult with legal counsel and notify the court that Defendant Honesty's attorney had been prohibited from entering the facility.  (*Id*. at ¶ 15).

A little over an hour later, at 3:00 P.M. on August 1, 2007, Ms. Lighter sent via facsimile a memorandum to CTF Records Manager David London, directing that inmate Honesty be transferred, along with his property, to the Central Detention Center. (*Id*. at ¶ 16). Inmate Honesty was discharged from CTF via the catwalk to the Receiving and Discharge post at the Central Detention Center at 9:00 P.M. on August 1, 2007. (*Id*.).

On August 2, 2007, after he was transferred back to the CTF, Defendant Honesty again waived protective custody, stating, "I am not separated from anyone, nor do I have any known enemies at the D.C. Detention Facility." (*See* Paul Aff. at ¶ 17).   Defendant Honesty was transferred back to CTF at 12:34 p.m. on August 2, 2007.  (*See* Paul Aff." Exhibit 1, Attachment B at CCA-KDH010 )

Prior to filing this Motion, Mr. Sidell failed to contact counsel for Christopher Ivins about the subject matter and intent to proceed with this frivolous contempt motion. Accordingly, Christopher Ivins submits this Response and requests that the Motion be denied.

**II.**        **LEGAL ARGUMENT.**

        **A.**        **No Evidence of Contempt By Christopher Ivins.**

As outlined in inmate Honesty's Motion, "a party who **knows** of an injunction, or court order, is bound to obey it."[2] Further, "although a party must have **actual knowledge of an order, before being held in contempt for violating it**, it is unnecessary that the party be formally served with the order, so long as there is actual notice that an order has been issued."[3]

In this case, Mr. Ivins had no knowledge of the July 18, 2007 court order: "At no point prior to the service of Defendant Honesty's Motion to Hold Christopher Ivins in Contempt was I aware of the existence of an order from this Court issued on July 18, 2007." (*See* Ivins Aff. at ¶ 17). Thus, pursuant to *Union Station* and *Finney*, Mr. Ivins cannot be found in contempt because he was unaware that the subject court order even existed. Moreover, the July 18, 2007 court order was not included in the attached institutional file from inmate Honesty thus providing no "notice" to the facility of the order. (*See* Paul Aff. at ¶ 13). Because there is no evidence of contempt, willful or otherwise, Christopher Ivins respectfully requests that inmate Honesty's Motion be denied.

        **B.**        **Mr. Sidell Violated the Facility Visitation Rules.**

Visitation rules at CTF are outlined in CCA Corporate and Facility Policy 16-2. (*See* Ivins Aff., Exhibit 3, at ¶ 8). Policy 16-2(A) states that "[a]ttorneys ONLY will be permitted to bring in lap top computers, audio tapes, and recorders for information that relates to their current case with the inmate with prior written notification and approval from the Assistant Warden of Programs." (*Id*.) In addition, 16-2(C)(4) and subsection (E), provides that visitors,

---

[2] *Union Tool Co. v. Wilson,* 259 U.S. 107 (1922) (emphasis added).
[3] *Finney v. Arkansas Board of Corrections,* 505 F.2d 194 (8th Cir. 1974); *Irving Trust Co. v. Spruce Apts*., Inc., 44 F.2d 218 (DC PA 1930).

like Mr. Sidell, who are disruptive, abusive towards CTF staff, or attempt to bring unauthorized items into the facility, may be barred from visiting with an inmate.

As outlined, during Mr. Sidell's visit with inmate Honesty on July 31, 2007, he refused to comply with CTF directives, was disruptive and verbally abusive toward staff, he endangered the security of the facility and violated the facility visitation policies by attempting to smuggle in contraband. To protect the safety and integrity of the facility, CTF was within its authority to prohibit Mr. Sidell from entering the facility to visit inmate Honesty. Thereafter, the facility attempted to have inmate Honesty returned back to the CTF so that his legal visits would not be impeded. Because there was no documentation in inmate Honesty's file about the July 18 Court Order, Mr. Ivins cannot be held in contempt for "willful violation" of the Order.

Moreover, CTF has thousands of visitors each year and the majority are handled without any problems.  Mr. Sidell is a member of the Bar and frequent visitor to CTF to handle criminal defense cases.  Instead of behaving as a professional member of the Bar during his July 31, 2007 visit to CTF, Mr. Sidell disrupted the entire visitation process, verbally abused staff and created an unnecessary scene. It is Mr. Sidell's direct actions that resulted in his prohibition from entering the CTF facility. Thereafter, the facility encouraged inmate Honesty's relocation to the Central Detention Facility so that Mr. Sidell would not have his legal visits with inmate Honesty interrupted in any way. Because there is no evidence of contempt, willful or otherwise, Christopher Ivins respectfully requests that inmate Honesty's Motion be denied.

**C.     No Authority To Transfer Inmate Honesty.**

Section 5.4.3 of the contract between Corrections Corporation of America and the District of Columbia prohibits CCA from transferring or assigning inmates either into or out of CTF: "[CCA] shall have no authority to transfer and/or assign inmates into or out of the CTF, whether or not such inmates are or are not inmates in the custody of DOC. DOC shall transfer inmates into and out of the CTF in accordance with DOC's practices and policies in effect at the

time of each transfer." (*See* Ivins Aff. at ¶ 5).

As the exhibits attached to this response show, Mr. Ivins never requested that inmate Honesty be transferred from CTF. Moreover, even if he had made the request, pursuant to the contract, Mr. Ivins had no legal authority to move inmate Honesty. Accordingly, there is no legal basis for holding Mr. Ivins in contempt of court based on both his lack of involvement and lack of authority to move inmate Honesty to the Central Detention Facility in August of 2007. Because there is no contempt, willful or otherwise, Christopher Ivins respectfully requests that inmate Honesty's Motion be denied.

**D.    Request for Attorneys' Fees.**

Mr. Sidell's Motion is frivolous, lacks merit and is lacking in any legal authority. As a result, Christopher Ivins respectfully requests this Court to enter an Order awarding attorneys' fees as a sanction for being forced to respond to this Motion.

Moreover, Mr. Sidell's Motion is nothing more than an attempt to "get even" with Mr. Ivins for ordering him to leave the facility, rather then advancing any legitimate concerns about violating an Order that was not even directed to Mr. Ivins.   Such an abuse of the judicial process by an officer of the Court should not be countenanced.

**III.    <u>CONCLUSION.</u>**

Based on the foregoing, Christopher Ivins, respectfully requests that Defendant Honesty's "Motion to Hold Christopher Ivins in Contempt for His Wilful (sic) Violation of the July 18, 2007 Order Placing Defendant at the Central Treatment Facility" be DENIED.

1740110.1

Respectfully submitted,

Dated: September 26, 2007

By   s/   Jennifer L. Holsman
Daniel P. Struck, DC Bar No. CO0037
Jennifer L. Holsman, DC Bar No. 495296
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Telephone:   (602) 263-1700
Facsimile:    (602) 263-1784

Paul J. Maloney, DC Bar No. 362533
Mariana D. Bravo, DC Bar No. 374809
CARR MALONEY, P.C.
1615 L Street, N.W., Suite 500
Washington, DC   20036
Telephone:        (202) 310-5500
Facsimile:         (202) 310-5555

Attorneys for Respondent, *Christopher Ivins*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2007, a copy of the foregoing was served

by First Class U.S. Mail on the following parties:

Gary M. Sidell, Esq.
1776 K Street, N.W.
Suite 800
Washington, D.C. 20006
Attorney for Defendant*, Kevin Honesty*

Barbara E. Kittay, Esq.
U.S. Attorney's Office
555 Fourth Street, N.W.
Room 4846
Washington, D.C. 20530
Attorney for Plaintiff*, United States*

Paul J. Maloney, Esq.
Mariana D. Bravo, Esq.
CARR MALONEY, P.C.
1615 L Street, N.W., Suite 500
Washington, DC   20036
Attorneys for Respondent, *Christopher Ivins*

s/  Jennifer L. Holsman

1740110.1

**EXHIBIT 2**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FILED

JUL 1 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| vs. | ) | Criminal No. 07-155 (PLF) |
| KEVIN HONESTY | ) | |
| Defendant. | ) | |
| | ) | |

**O R D E R**

Upon careful consideration of defendant's request, the United States

Marshal Service and the Department of Corrections are directed to house

KEVIN HONESTY _____ at Central Treatment

Facility until further Order of this Court.

_July 18, 2007_
Date

_Paul L. Friedman_
Judge Paul L. Friedman
United States District Court

**EXHIBIT 3**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

United States of America,

               Plaintiff,

       v.

Kevin Honesty,

               Defendant.

Criminal Action No. 07-155 (PLF)

## AFFIDAVIT OF CHRISTOPHER IVINS

I, CHRISTOPHER IVINS, being duly sworn according to law, upon my oath, depose and say:

1.      I have been employed by Corrections Corporation of America ("CCA") since 2003. I am currently the Chief of Security at the Correctional Treatment Facility ("CTF") in Washington, D.C., a position I have held for the past fifteen (15) months.

2.      I have reviewed the allegations contained in Defendant Honesty's Motion and Supporting Memorandum of Points and Authorities to Hold Christopher Ivins in Contempt for his Wilful [sic] Violation of the July 18, 2007 Order Placing Defendant at the Central Treatment Facility.

3.      I have personal knowledge that the matters in this Affidavit are true and accurate, and submit this Affidavit in support of the Opposition to Defendant Honesty's Motion to Hold Christopher Ivins in Contempt.

4.      As Chief of Security, I am familiar with CCA-CTF policies, procedures and practices relating to all security aspects at CTF. Additionally, I am familiar with relevant

provisions of the Operations and Management Agreement by and between the District of

Columbia and Corrections Corporation of America ("the Contract") for correctional services

relating to the operations and management of CTF. I oversee the actions and duties of all

security professionals employed at CTF, regardless of rank, and report directly to the Warden

and Assistant Warden of Operations at CTF. I am also one of the listed Administrative Duty

Officers ("ADO") at CTF.

       5.     Section 5.4.3 of the Contract prohibits CCA from transferring or assigning

inmates either into or out of CTF. Attachment A hereto is a true an correct copy of Section 5.4.3

of the Contract. Rather all intake, discharge, and transfer orders may only be prepared and

generated by the D.C. Department of Corrections Office of Case Management Services

("CMS").

       6.     Normally, when an inmate needs to be kept separate from other

individuals, CMS, after being advised by the Court, the prosecuting attorney or the defense

attorney, issues a separation order naming those individuals, so that they will be housed in

separate units and/or facilities. Additionally, upon intake to the facility inmates are questioned

regarding whether they have any potential enemies. Moreover, if an inmate becomes aware of

an inmate he should be separated from, the inmate may advise facility staff, and a separation

order may be originated following an investigation of the claim, and resulting in a movement of

an inmate.

       7.     On or about July 24th, District of Columbia Fire and Emergency Medical

Services were taking a CTF Correctional Officer out of the facility on a stretcher. At that time I

was this the paramedics, and asked people waiting in the visitation area to step back so that the

stretcher could pass through. Defendant Honesty's counsel, Gary Sidell, ignored the initial

1828035.1

request for visitors in the visitation area to step back. As he was impeding the egress of the paramedics and injured officer, I had to touch his elbow to get his attention and ask him to please move. He complied with this subsequent request.

8.      Visitation rules are set forth on CCA Corporate and Facility Policy 16-2. Attachment B hereto is a true and correct copy of Policy 16-2, effective September 14, 2006. Policy 16-2 provides that attorneys are only permitted to bring lap top computers, audio tapes and recorders for information that relates to their current case with the inmate they are visiting. Non-legal material is prohibited. Likewise, visitors, including counsel, who are disruptive, abusive towards CTF staff, or attempt to bring unauthorized items into the facility, may be barred from visiting with an inmate under Section E of the policy.

9.      On July 31, 2007 at approximately 2:00 P.M., Mr. Sidell was in the visitation hallway awaiting a legal visit with his client, Defendant Honesty. The Visitation Officer, Virginia Cooley, summoned me due to Mr. Sidell's refusal to place his personal, non-legal materials into one of the lockers which is provided for visitors' possessions which are not permitted inside the facility.

10.     As I approached Mr. Sidell, I noticed that he had among his possessions a romance novel and magazine, which I recognized were not legal materials of any nature. I asked Mr. Sidell to put his possession in the locker. Mr. Sidell thereafter raised his voice, and became argumentative and disruptive. At that point, I asked Mr. Sidell to please leave the facility. At this point, Mr. Sidell attempted to intimidate me into reconsidering my decision to deny his visitation by telling me I was "making a decision affecting [my] career." I continued to ask Mr. Sidell to depart the premises, but he did not. Finally, I requested that one of the officers call the

- 3 -

Metropolitan Police Department if Mr. Sidell continued to refuse to leave. Mr. Sidell finally consented and left the facility.

11.    That same day, at 2:27 P.M. I sent Warden Caulfield and Assistant Wardens Richardson and Johnston an e-mail detailing the incident and recommending that Mr. Sidell be prohibited from CTF for security reasons. Attachment C hereto is a true and correct copy of that e-mail.

12.    Learning of this incident the following morning, Warden Caulfield advised me to have a memorandum drafted for his signature prohibiting Mr. Sidell from entering CTF. Attachment D hereto is a true and correct copy of the e-mail response I received from Warden Caulfield on August 1, 2007.

13.    Later that same day, Mr. Sidell again attempted to visit with Defendant Honesty. He was advised that his request for a visit was denied. I came out to the visitation lobby and requested Mr. Sidell to leave the premises.

14.    Recognizing the problems inherent in a situation when an inmate's legal counsel is not permitted to enter the facility, on August 1, 2007 at 12:35 P.M., Warden Caulfield sent an e-mail to Vera Lightner, Director of CMS, of which I received a copy, asking if there was any reason inmate Honesty could not be transferred out of CTF as there was nothing in the file prohibiting the move. Attachment E hereto is a true and correct copy of the e-mail sent by Warden Caulfield.

15.    At 1:05 P.M., Warden Caulfield received a response from the Acting Contract Monitor, Deborah A. Miller, advising him that Ms. Lightner was unavailable, and suggested that he consult with legal counsel and notify the court that Defendant Honesty's

- 4 -

attorney had been prohibited from entering the facility. Warden Caulfield forwarded me a copy

of that response at 1:52 P.M. Attachment F hereto is a true and correct copy of that message.

16.     At 3:00 P.M. on August 1, 2007, Ms. Lighter sent via facsimile a

memorandum to CTF Records Manager David London, directing that inmate Honesty be

transferred, along with his property, to the Central Detention Facility. Attachment G hereto is a

true and correct copy of that memorandum and the subsequently generated Standard Inter-

Institutional Transfer Order. Inmate Honesty was discharged at CTF via the catwalk to the

Receiving and Discharge post at the Central Detention Center at 9:00 P.M. on August 1, 2007.

17.     At no point prior to the service of Defendant Honesty's Motion to Hold

Christopher Ivins in Contempt was I aware of the existence of an order from this Court issued on

July 18, 2007.


FURTHER AFFIANT SAYETH NAUGHT.

                                                    _____
                                                    Christopher Ivins


WASHINGTON                    )
                              ) ss.
DISTRICT OF COLUMBIA          )


        SUBSCRIBED AND SWORN before me this 26th day of September, 2007, by
Christopher Ivins.

                                                    _____
                                                    Notary Public


My Commission Expires:


                    PHOENIX C. ISHMON
                NOTARY PUBLIC DISTRICT OF COLUMBIA
                My Commission Expires July 31, 2011

1828035.1

**ATTACHMENT A**



# OPERATIONS AND MANAGEMENT AGREEMENT

## by and between

# THE DISTRICT OF COLUMBIA

## and

# CORRECTIONS CORPORATION OF AMERICA

THIS OPERATIONS AND MANAGEMENT AGREEMENT (the "Agreement") is made and entered into as of January 30, 1997 by and between THE DISTRICT OF COLUMBIA, a municipal corporation (the "District") and CORRECTIONS CORPORATION OF AMERICA, a corporation duly organized and existing under the laws of Delaware (the "Operator" or "CCA").

## REDACTED

\45196\011\OPERATNG.018

**REDACTED**

5.4.3    <u>Transfer/Assignment of Inmates</u>.  The Operator shall have no authority to transfer and/or assign inmates into or out of the CTF, whether or not such inmates are or are not inmates in the custody of DOC.  DOC shall transfer inmates into and out of the CTF in accordance with DOC's practices and policies in effect at the time of each transfer.  DOC will assign only medium security and minimum security inmates to the CTF general population.  DOC may assign maximum security inmates to the CTF special management unit.  DOC may assign inmates of any classification to the system-wide infirmary at the CTF. The Operator may not refuse to accept the assignment of any inmate to the CTF, but if the Operator believes that an inmate has been erroneously assigned to the CTF or warrants transfer, it may request his or her transfer in accordance with DOC policies and practices.  DOC will use its best efforts, consistent with the requirements of the entire prison system, to transfer to facilities other than the CTF inmates who are not classified as medium security prisoners as soon as the reason for their assignment to the CTF has been satisfied.

5.4.4

**REDACTED**

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date first above written.

**THE DISTRICT OF COLUMBIA**
("District")

BY: _Nanda E. Moorman_

TITLE: _Contracting Officer_

**CORRECTIONS CORPORATION OF AMERICA**
("Operator")

BY: _[signature]_

TITLE: _Chairman & CEO_

# ATTACHMENT B

| | |
|---|---|
| **CHAPTER 16:** | **COMMUNICATIONS, MAIL AND VISITING** |
| **SUBJECT:** | **VISITATION** |
| **SUPERSEDES:** | **FEBRUARY 15, 1991** |
| **EFFECTIVE DATE:** | **JULY 1, 1995** |
| **FACILITY:** | **CORRECTIONAL TREATMENT FACILITY** |
| **FACILITY SUPERSEDES:** | **JULY 26, 2006** |
| **FACILITY EFFECTIVE DATE:** | **SEPTEMBER 14, 2006** |

**APPROVED:**   **SIGNATURE ON FILE**

                **DAVID L. MYERS**
                **PRESIDENT**

**APPROVED:**   **SIGNATURE ON FILE**
                **LINDA G. COOPER**
                **VICE PRESIDENT, LEGAL AFFAIRS**

**16-2.1  PURPOSE:**

To establish general guidelines for inmate/resident visitation and guidelines for limitations on visitation that they are reasonably related to legitimate penalogical goals and/or required by a Contracting Agency.

**16-2.2  AUTHORITY**:

Corporate and Facility Policy

**16-2.3  DEFINITIONS**:

A.  <u>Contraband</u> - Any items possessed by an inmate/resident or found within the facility which are not issued, sold in the canteen, approved by the Warden/Facility Administrator, or authorized by written facility policy.

B.  <u>Frisk Search</u> - A complete head to toe search of a clothed individual involving observation and feeling the total length of the body, checking all surface areas for contraband, as well as a thorough search of clothing including belts, pockets, collars, waistbands and removal of shoes and socks.

C.  <u>Pat Search</u> - A search conducted by placement of hands on the visitor's clothing to feel for weapons.

D.  <u>Reasonable Suspicion</u> - Actions, conduct or circumstances which lead an employee to suspect that the visitor may present a risk to the security and order of the Facility.

**AT THIS FACILITY ADDITIONAL DEFINITIONS ARE:**

**E.**   <u>**Attorney- An individual trained in the law, and admitted to practice before the bar of a given jurisdiction, authorized to advise, represent and act for the inmate/resident in any legal proceedings**</u>

**F.**   <u>**Law Student- An individual admitted to a qualified law school and participating in a clinical program, appointed by a court to advise, represent, or act for an inmate/resident in any legal proceeding.**</u>

**Proprietary Information - Not For Distribution - Copyrighted**
**Property of Corrections Corporation of America**

G. **Expert- Any licensed or qualified professional utilized by an attorney or law student to perform an examination of or a test on an inmate/resident for purposes of a legal proceeding or parole matter.**

H. **Agent- An agent of the attorney or law student who has been authorized to communicate with an inmate/resident.**

**16-2.4  POLICY**:

Each Facility will have a designated area where inmates/residents may accept visitors. The number of visitors an inmate/residents may receive and the length of visits are to be limited only by Facility schedules, space or personnel constraints or contract requirements. The Warden/Facility Administrator or designee can make an exception when Reasonable Suspicion exists that such visits jeopardize the security of the Facility or the safety of the inmate/resident or visitor.

**16-2.5  PROCEDURES**:

A.   GENERAL

1.   Each Facility is to set hours, frequency and rules for visitation.

2.   Adult visitors are to show positive picture identification prior to each visitation.

**GENERAL RULES FOR VISITATION AT THIS FACILITY ARE:**

**All visitors must be eighteen (18) years old unless accompanied by a parent or guardian. All adult visitors must surrender their positive picture identification and complete a Visitor Registration form prior to each visit. Any visitor that cannot be positively identified using the picture ID will be denied access to the facility by the Shift Supervisor. A visitor who can be positively identified by their picture ID shall be allowed access to the facility regardless of the gender/sex indicated on the ID. The Visitor Registration form will contain the visitor's name, address and relationship to the inmate/resident. If a minor enters with an adult, the Visitor Registration form will indicate the number of minors. Positive picture identification includes:**

- **State issued ID (non-drivers ID with photograph);**

- **Valid Drivers license with photograph; or**

- **Government ID (Federal, State, Military, etc.) with picture.**

**The visitor's ID will not be returned until all persons on the registration form are accounted for.**

**SCHEDULING A VISIT**

**The visitor must call the facility reception desk requesting a date and time for a visit in accordance with the visitation schedule. The caller must state the inmate/resident's name; DCDC number, and who will be visiting to include the number of minors. Visitation reservations may be scheduled with the Visitation Clerk Monday through Friday at 202-698-3000 from 8:00 am to 4:00 PM. Once the appointment is made the visitor will be assigned a confirmation number. Visitors must arrive twenty (20) minutes prior to their scheduled time with the assigned confirmation number. Visitors that do not register prior to their appointed time will not be allowed to visit. Visitors may cancel a visit by contacting the reception desk.**

**A limit of five (5) adults is permitted to visit at one (1) time. If adults and children are visiting together no more than two (2) adults and a reasonable number of children may visit at one (1) time.**

**Proprietary Information - Not For Distribution - Copyrighted
Property of Corrections Corporation of America**

Provided there is no risk to security, inmates/residents who share immediate family members may visit together (proof of relationship is required). This does not apply to related inmates/residents of the opposite gender (i.e. brother/sister) or segregated inmates/residents.

Each inmate/resident is allowed twelve (12) people on their visitation list. Revisions to the visitation list may be made six (6) months from the date of arrival at the facility; any exceptions must be approved by the Program Manager. Requests for revisions must be submitted to the Case Manager.

## DRESS CODE FOR VISITORS:

All visitors are expected to be dressed in attire that is not provocative or offensive to others. The following dress is prohibited:

- Halter or tank tops;
- Strapless tops/dresses;
- Bare midriff or revealing attire;
- Spandex, tight knit,or excessively tight fitting clothing;
- Flip-flops, shower, or house shoes. (*Open toe shoes ARE permitted);
- See-through clothing; (*NOTE: Females must wear a bra);
- Clothing bearing statements or pictures which may be offensive to others or contains signs or symbols of security threat groups;
- Skirts and dresses are permitted provided the leg is covered to within three (3) inches above the knee in a standing position.
- No shorts (*except children seven (7) years old or younger);
- No gray sweat suits in adult sizes; and
- No blue pants and blue tops worn together, no white tops and white bottoms worn together.

## DRESS CODE FOR INMATE/RESIDENTS

Inmates/residents will only be allowed to visit if properly attired in approved clothing.

- Facility issued uniform (blue pants and shirt);
- A white T-shirt may be worn under the facility issued shirt. All shirts must be tucked in at all times during the visit. The inmates/residents ID will be placed on the   pocket of the uniform shirt;
- Shoes that cover the entire foot must be worn at all times.  No shower shoes, house shoes or sandals will be allowed;
- Religious head gear; and
- No jewelry except for an authorized wedding band.

B.    SEARCHES

Visitors may be searched by a scanning device and/or frisk or pat searched.    Belongings, such as purses and briefcases, may be searched.

1.    Frisk or pat searches should be conducted in a dignified manner with as much privacy as can be reasonably afforded.  Frisk searches of visitors should be done by officers of the same sex as the visitor if readily available.

**Proprietary Information - Not For Distribution - Copyrighted
Property of Corrections Corporation of America**

**CCA CORPORATE AND FACILITY POLICY**      **PAGE 4 OF 7**      **POLICY 16-2**

2.    If contraband is found, a report of the incident is to be submitted to the Warden/Facility Administrator or designee, the contraband confiscated and, where appropriate, the visitor detained for law enforcement officials.

3.    No strip or body cavity searches of visitors will be conducted.

**AT THIS FACILITY ADDITIONAL PROCEDURES ARE:**

**All visitors will be pat searched by an officer of the same sex. If the gender of the visitor is unknown or not specified, a female officer will pat search the visitor prior to entry.**

**All inmates/residents will be pat searched prior to a contact visit. After all contact visits all inmates/residents will be strip searched. The strip search will be conducted by staff of the same sex as the inmate/resident. Male staff will not strip search female inmates/residents under any circumstances. All strip searches are to be conducted in private except in emergency circumstances where a legitimate penalogical interest exists.**

**Immediately before and after visiting hours, staff assigned to the visitation area must conduct a thorough physical/search of the area for contraband. Inmates/Residents are not permitted in the area until the search is completed.**

**Visitors are subject to be searched by the facility Narcotic Detection Canine and the Canine Handler only with the use of a barrier screen.**

C.    DENIAL AND TERMINATION

A particular visit may be denied or terminated under the following circumstances:

1.    Visitors are under the influence of drugs or alcohol;

2.    The visitor refuses or fails to produce sufficient identification or falsifies identifying information, if required by the Facility;

3.    Reasonable Suspicion exists that the security and order of the Facility may be endangered by the visitor;

4.    The visitor or inmate/resident becomes disruptive during the visit causing the order of the Facility to be endangered;

5.    The visitor refuses to submit to a pat or scanning search;

6.    The visitor is in violation of facility visiting rules or regulations; or

7.    Insufficient space.

**AT THIS FACILITY ADDITIONAL PROCEDURES ARE:**

**8.**    **If the visitor does not have an appointment.**

**9.**    **Any visitor who cannot be positively identified using the picture ID will be denied access to the facility by the Shift Supervisor.**

D.    SUSPENSION

1.    Visitation privileges of a visitor may be suspended if Reasonable Suspicion exists that the security of the Facility may be endangered by the visitor. Privileges are to suspended only by the Warden/Facility Administrator or designee.

2.    NOTICE

a.    Prior to suspending visitation privileges, notice is to be given to both the inmate/resident and the visitor of the reasons for the suspension.

**Proprietary Information - Not For Distribution - Copyrighted**
**Property of Corrections Corporation of America**

**CCA CORPORATE AND FACILITY POLICY**          **PAGE 5 OF 7**          **POLICY 16-2**

    b.    The inmate/resident and visitor will be allowed to submit written (or, if time demands, oral) statements in opposition to the proposed suspension.

    c.    A written notice of the decision, including a statement of reasons will be given to the inmate/resident and to the visitor. The statement of reasons may be deleted to the extent it would jeopardize the security of the institution or the safety of any individual.

    d.    In the case of an indefinite suspension, the notice is to include a date when re-application for visiting privileges may be made on behalf of the visitor.

    3.    SUSPENSION PERIODS

    a.    Based on the information provided by the staff and by the inmate/resident and/or visitor, visitation privileges may be suspended for a specific period or indefinitely.

    b.    The visitation privileges may be temporarily suspended pending the completion of the above process.

E.    ATTORNEYS AND ATTORNEY REPRESENTATIVES

During normal hours, attorneys and their representatives, i.e. investigators, paralegals and law students, are permitted to visit inmates in reasonable numbers for business purposes.

    1.    NOTICE OF VISIT

The Facility may require notification 24 hours in advance of an intended visit, unless it can be shown that such notice was not possible.

**AT THIS FACILITY ADDITIONAL PROCEDURES ARE:**

**Notification of intended visit shall be faxed on letterhead from the law office (at 202-698-3301) or telephoned to the Assistant Warden of Programs (at 202-698-3000 ext 2210) twenty-four (24) hours prior to visit unless it can be shown that such notice was not possible. The request should include the name of the Attorney, Law clerk, or Investigator/Expert and the inmate/resident he/she wishes to see. The request should also describe any equipment that will be needed during the visit (Attorneys only).**

**Requests to conduct legal visits with multiple inmates/residents will be faxed to the Assistant Warden of Programs twenty-four (24) hours prior to the visit to ensure that separations are checked and the safety of the inmate/resident is not jeopardized.**

**Notification of Governmental services such as the US Parole Commission or Probation, MPD, or other police entity entering for official business is not required.**

**Notification for Parole hearing witnesses will be faxed to the Assistant Warden of Operations twenty four (24) hours in advance. The approved list will be posted at the staff entrance.**

    2.    CREDENTIALS OF ATTORNEYS AND ATTORNEYS' REPRESENTATIVES

    a.    Each attorney must present bona fide evidence of his/her license to practice law, to include a state bar membership card and matching identification, such as driver's license.

    b.    The Facility may require the employing attorney to submit an affidavit to the Warden/Administrator certifying that the attorney's representative [law clerk, paralegal, investigator] is employed by the attorney.

**Proprietary Information - Not For Distribution - Copyrighted**
**Property of Corrections Corporation of America**

    c.    The attorney's representative [law clerk, paralegal, investigator] must show picture identification and written evidence of their authority to visit the inmate/resident from the attorney for whom the representative works.

3.    SEARCHES

Attorneys and their representatives can be frisk or pat searched. Their belongings may be searched for contraband.

4.    DENIAL OF VISITS

Improper acts [such as those not in conformance with this or other CCA Policies and Procedures] committed by an attorney or attorney's representative while in the Facility may result in termination of visit and denial of future visits.

5.    **AT THIS FACILITY ADDITIONAL PROCEDURES ARE:**

**A Criminal Justice Act Investigator ID issued by the Superior Court may be substituted for a law firm or attorney ID.**

**Attorneys or their representatives [law clerks, paralegal and investigators] must complete the 16-2E Request for Legal Visits.**

**Each US Parole Examiner, Probation Officer, Police Officer, Court Services Officer will present/surrender a picture ID furnished by the governmental agency.**

**Ex-Offenders – Law firms and attorneys must request and receive written approval from the Assistant Warden of Programs for clerks, investigators or legal representatives who have convictions for felony or misdemeanor charges in the District of Columbia or any other jurisdiction prior to a contact visit.**

**Eating and the admittance of food or beverages by an attorney or their representatives is prohibited.**

**Attorneys or their representatives will be responsible for opening up and removing all batteries and covers on equipment for inspection. Refusal to disassemble equipment will be grounds for denial of equipment access.**

**Legal Representatives are prohibited from giving any item other than legal materials to the inmate/resident and are also prohibited from allowing inmates/residents to use/operate any electronic equipment authorized for the visit.**

**When there is reason to believe that a forthcoming visit and/or particular visitor will compromise the safety and security of inmates/residents, staff, or the institution, the ADO or above are the only persons authorized to cancel the visit. Inmates/Residents will be notified in writing of denial as soon as possible, to include a copy of the denial memo. A copy of the denial memo will be forwarded to Internal Affairs.**

**Any incidents relating to verbal abuse towards staff by visitors, or vice-versa, confiscation of contraband from visitors, disruptive activity from visitors to include alcoholic consumption, etc., shall be documented and brought to the attention of the ADO. The ADO may cancel the visit and have the visitor removed from the visiting list. All incidents will be documented on a 5-1C.**

F.    VISITS WITH MEMBERS OF THE CLERGY

**Proprietary Information - Not For Distribution - Copyrighted
Property of Corrections Corporation of America**

1.      Members of the clergy who wish to visit with an inmate/resident on a professional basis must make a request to the Warden/Facility Administrator or designee prior to the visit.

2.      Wardens/Administrators may require written proof of the person's clergy certification from the church, ministry or the like.

3.      Such clergy visiting will not be counted against the inmate/resident's visiting hours.

3.      Any member of the clergy who wishes to visit regularly as a friend rather than in his/her official capacity must make application to be placed on the inmate/resident's regular visiting list.

**ADDITIONAL PROCEDURES FOR VISITS BY MEMBERS OF THE CLERGY AT THIS FACILITY ARE AS FOLLOWS:**

**NONE**

G.    SPECIAL VISITS

The Facility may allow special visits in addition to those during normal visiting hours.

**PROCEDURES TO BE FOLLOWED AT THIS FACILITY ARE:**

**Out of Town Visits:  Visits by persons residing three-hundred (300) miles or more away, can be authorized by the Administrative Duty Officer.  The traveler must present valid proof of address indicating a residence more than three-hundred (300) miles outside of the DC area.**

**16-2.6  REVIEW:**

This policy will be reviewed as needed by the Vice President, Facility Operations and the Vice President, Legal Affairs

**16-2.7  APPLICABILITY**

All CCA Facilities except those required to follow a visitation policy of the contracting agency.

**16-2.8  ATTACHMENTS:**

None

**ATTACHMENTS UTILIZED AT THIS FACILITY ARE:**

**16-2A       Additional Procedures for Attorney Visits**

**16-2 A1      Visitation Registration Form**

**16-2 A2      Visitation Schedule, Rules and Regulations**

**16-2 A3      Visitation Reservation Schedule - Weekday**

**16-2 B       Visitation List Add/Drop Form**

**16-2 C       Visitor Request Form**

**16-2 D       Records of Visits**

**16-2 E       Request for Legal Visits**

**16-2.9  REFERENCES:**

ACA Standards.  The ACA Standards for this facility are:

**5D-10, 5D-11, 5D-12, 5D-13, 5D-15, 2E-03**

**Proprietary Information - Not For Distribution - Copyrighted**
**Property of Corrections Corporation of America**

CCA/CORRECTIONAL TREATMENT FACILITY

16-2A

# ADDITIONAL ATTORNEY VISITATION PROCEDURES

## ATTORNEY DRESS CODE

Attorneys will follow the dress guidelines as outlined in policy 16-2 section .5.A.2.

## ATTORNEY EQUIPMENT

Attorneys ONLY will be permitted to bring in lap top computers, audio tapes, and recorders for information that relates to their current case with the inmate with prior written notification and approval from the Assistant Warden of Programs. One legal room is equipped with a TV/VCR for attorney use. Inmates are prohibited from handling or operating any equipment. Cellular phones are not permitted; a pay phone is available in the visitation hall. Inmates will not be permitted to utilize the pay phone.

## LEGAL VISITS FOR SEGREGATED INMATES

Special Management inmates will be stripped searched prior to leaving the Special Management Unit. The segregated inmate will be escorted to the visitation hall in restraints by two correctional officers.

Upon entering the visitation hall the area will be cleared and the inmate will be placed in the legal room.

Once in the legal room the restraints will be removed for the duration of the visit. This will be on a case by case basis. If the inmate's behavior is threatening or non-compliant the Shift Supervisor will be contacted prior to removing the restraints.

Upon completion of the visit the inmate will be restrained prior to exiting the legal room. The area will be cleared and the inmate will be escorted back to the Special Management Unit by two officers, placed in the housing unit shower, stripped searched and returned to his cell.

## ADDITIONAL SPACE

In the event that all legal rooms are occupied the non-contact area will be used/offered. The attorney and inmate will be placed on the same  side, utilizing every other booth. The area will be monitored/roved by the visitation officer.

## HOW TO REPORT AN INCIDENT

When a complaint or an incident occurs concerning visiting procedures the attorney, law clerk, investigator, or expert shall contact the Assistant Warden of Programs at 202-698-3000 ext 2202. The complaint should describe the incident in detail, to include date, time, location and the names of persons involved. The Assistant Warden of Operations will contact the complainant within forty-eight hours to acknowledge receipt of the complaint and to request any further information. The Assistant Warden of Programs will then review the incident and notify the complainant in writing within two weeks of any decision or action taken. If the action involves a restriction or prohibition on legal visitation, the complainant may forward an  appeal to the Warden  within two weeks.

## RESPONSIBILITY OF THE STAFF ENTRANCE OFFICER

Upon an attorneys request for a legal visit the Staff Entrance Officer shall notify the assigned Housing Unit Officer of the said visit, and ensure that the inmate is ready for escort within fifteen minutes.   The Housing Unit Officer will be instructed to call back and advise in the event the inmate is not on the unit.

If the inmate is not on the unit the Staff Entrance Officer will notify the inmates Work Supervisor, Recreation Officer, Chaplain, etc., of he inmate visit.  Instruct the individual to notify the inmate of their visit and to be ready for escort immediately.

If the inmate cannot be located as outlined above, or fifteen minutes has elapsed, the Visitation Senior Officer and appropriate Shift Supervisor will be notified to begin a search for the inmate. All contacts will be logged in the Staff Entrance logbook.

Ensure that any delay in excess of twenty (20) minutes is reported to the Chief of Security. Inform visitors that have been waiting in excess of    fifteen (15) minutes that all efforts are being made to locate the inmate.

## RESPONSIBILITY OF THE ADMINISTRATIVE DUTY OFFICER

The ADO will make rounds through the visitation area to ensure policies are being followed and address any issues with visitors.

When there is reason to believe that a forthcoming visit and/or particular visitor will compromise the safety and security of inmates, staff, or the institution, the ADO or above are the only persons authorized to cancel the visit.   Inmates will be notified in writing of denial as soon as possible, to include a copy of denial memo to Internal Affairs.

## COUNT TIME

Inmates may be escorted to the visitation hall for a legal visit during count time, only <u>with approval of the Shift Supervisor or above.</u>

# ATTACHMENT C

# REDACTED

**From:** Ivins, Christopher
**Sent:** Tuesday, July 31, 2007 2:27 PM
**To:** Caulfield, John; Richardson, Shelton; Johnston, Isaac
**Subject:** Attorney

Sir today at approx 1400 hrs an attorney named  Gary Sidell bar # 32261 came to the facility and became belligerent with staff at staff entrance regarding a magazine and a novel that he was trying to bring in I responded to the post to speak with the gentleman and he became irate yelling at me I instructed him to leave or I would call MPD he did leave and made a threat to me stating that "you have just bought yourself a lot of trouble" Warden he needs to be banned from this facility. I would also suggest that you forward this to Ms Amato.

(i) This e-mail and any files transmitted with it are confidential and intended solely for the use of the intended recipient(s). If you have received this e-mail in error, please notify the sender immediately and delete this e-mail and any associated files from your system. (ii) Views or opinions presented in this e-mail are solely those of the author and do not necessarily represent those of Corrections Corporation of America. (iii) The recipient should check this e-mail and any attachments for the presence of viruses. The company accepts no liability for errors or omissions caused by e-mail transmission or any damage caused by any virus transmitted by or with this e-mail. This email has been scanned for content and viruses by the CipherTrust Email Security System.

9/21/2007

# ATTACHMENT D

# REDACTED

**From:** Caulfield, John
**Sent:** Wednesday, August 01, 2007 6:14 AM
**To:** Ivins, Christopher; Richardson, Shelton; Johnston, Isaac
**Subject:** RE: Attorney

Not a problem.  Have a memo done to front entrance for my signature.

**From:** Ivins, Christopher
**Sent:** Tue 7/31/2007 1:27 PM
**To:** Caulfield, John; Richardson, Shelton; Johnston, Isaac
**Subject:** Attorney

Sir today at approx 1400 hrs an attorney named  Gary Sidell bar # 32261 came to the facility and became belligerent with staff at staff entrance regarding a magazine and a novel that he was trying to bring in I responded to the post to speak with the gentleman and he became irate yelling at me I instructed him to leave or I would call MPD he did leave and made a threat to me stating that "you have just bought yourself a lot of trouble" Warden he needs to be banned from this facility. I would also suggest that you forward this to Ms Amato.

**(i) This e-mail and any files transmitted with it are confidential and intended solely for the use of the intended recipient(s). If you have received this e-mail in error, please notify the sender immediately and delete this e-mail and any associated files from your system. (ii) Views or opinions presented in this e-mail are solely those of the author and do not necessarily represent those of Corrections Corporation of America. (iii) The recipient should check this e-mail and any attachments for the presence of viruses. The company accepts no liability for errors or omissions caused by e-mail transmission or any damage caused by any virus transmitted by or with this e-mail. This email has been scanned for content and viruses by the CipherTrust Email Security System.**

9/21/2007

# ATTACHMENT E

**REDACTED**

**From:** Caulfield, John
**Sent:** Wednesday, August 01, 2007 12:35 PM
**To:** Lightner, Vera (DOC)
**Cc:** 'Miller, Deborah A. (DOC)'; Ivins, Christopher; Johnston, Isaac; Richardson, Shelton; Fulton III, Walter
**Subject:** Transfer of Inmate Honesty, Kevin #220-991

Vera, I have barred inmate Honesty's attorney, Gary Sidell, from entering the CTF after he tried to bring in unauthorized items (magazine and book) yesterday and got very rude and beligerent with staff, including the Chief of Security.

I am told that inmate Honesty has a court date imminent, however, so I am asking that he be transferred back to the CDF to meet with Attorney Sidell.

Thank you...

---

(i) This e-mail and any files transmitted with it are confidential and intended solely for the use of the intended recipient(s). If you have received this e-mail in error, please notify the sender immediately and delete this e-mail and any associated files from your system. (ii) Views or opinions presented in this e-mail are solely those of the author and do not necessarily represent those of Corrections Corporation of America. (iii) The recipient should check this e-mail and any attachments for the presence of viruses. The company accepts no liability for errors or omissions caused by e-mail transmission or any damage caused by any virus transmitted by or with this e-mail. This email has been scanned for content and viruses by the CipherTrust Email Security System.

# ATTACHMENT F

# REDACTED

**From:** Caulfield, John
**Sent:** Wednesday, August 01, 2007 1:52 PM
**To:** Johnston, Isaac; London, David; Fulton III, Walter
**Cc:** Ivins, Christopher
**Subject:** FW: Transfer of Inmate Honesty, Kevin #220-991

Mr. London, can you tell me which is the court of record here?  Thanks...

---

**From:** Miller, Deborah A. (DOC) [mailto:DeborahA.Miller@dc.gov]
**Sent:** Wednesday, August 01, 2007 1:01 PM
**To:** Caulfield, John
**Cc:** Lightner, Vera (DOC)
**Subject:** RE: Transfer of Inmate Honesty, Kevin #220-991

Warden Caulfield,

I think it would be a good idea also to talk with your legal counsel and notify the court of record of this. Ms. Lightner has not returned from her meeting.

*D.A. Miller*
*Acting Contract Monitor*
*DC Department of Corrections*
*CCA/CTF Room-B1-142*
*deboraha.miller@dc.gov*
*202-698-3019-office*
*fax -698-9841*

*And let us not be weary in well doing: for in due season we shall reap, if we faint not.*

---

**From:** Caulfield, John [mailto:John.Caulfield@correctionscorp.com]
**Sent:** Wednesday, August 01, 2007 12:35 PM
**To:** Lightner, Vera (DOC)
**Cc:** Miller, Deborah A. (DOC); Ivins, Christopher; Johnston, Isaac; Richardson, Shelton; Fulton III, Walter
**Subject:** Transfer of Inmate Honesty, Kevin #220-991

Vera, I have barred inmate Honesty's attorney, Gary Sidell, from entering the CTF after he tried to bring in unauthorized items (magazine and book) yesterday and got very rude and beligerent with staff, including the

9/21/2007

Chief of Security.

I am told that inmate Honesty has a court date imminent, however, so I am asking that he be transferred back to the CDF to meet with Attorney Sidell.

Thank you...

---

**(i) This e-mail and any files transmitted with it are confidential and intended solely for the use of the intended recipient(s). If you have received this e-mail in error, please notify the sender immediately and delete this e-mail and any associated files from your system. (ii) Views or opinions presented in this e-mail are solely those of the author and do not necessarily represent those of Corrections Corporation of America. (iii) The recipient should check this e-mail and any attachments for the presence of viruses. The company accepts no liability for errors or omissions caused by e-mail transmission or any damage caused by any virus transmitted by or with this e-mail. This email has been scanned for content and viruses by the CipherTrust Email Security System.**

---

**(i) This e-mail and any files transmitted with it are confidential and intended solely for the use of the intended recipient(s). If you have received this e-mail in error, please notify the sender immediately and delete this e-mail and any associated files from your system. (ii) Views or opinions presented in this e-mail are solely those of the author and do not necessarily represent those of Corrections Corporation of America. (iii) The recipient should check this e-mail and any attachments for the presence of viruses. The company accepts no liability for errors or omissions caused by e-mail transmission or any damage caused by any virus transmitted by or with this e-mail. This email has been scanned for content and viruses by the CipherTrust Email Security System.**

# ATTACHMENT G



## MEMORANDUM

TO:            David London
               Chief, Records Office (CTF)

FROM:          Vera P. Lightner
               Case Management Services

DATE:          August 1, 2007

SUBJECT:       Inmate Transfer

RE:            Name            DCDC         Housing/Status
               Honesty, Kevin  220-991      CCA/CTF

---

The above referenced inmate is currently housed at the CCA/CTF. Please make arrangements to transfer him to D.C. Jail on Wednesday, August 01, 2007.

Thank you for your cooperation.

Cc:    William J. Smith, CCE, Warden (D.C. Jail)
       Brenda Ward, Deputy Warden for Programs
       Kathy Souverain, Chief, Records Office (D.C. Jail)
       John Caulfield, Warden (CCA/CTF)
       Medical
       Count Book

# STANDARD INTER-INSTITUTIONAL TRANSFER ORDER

| 1. INSTITUTION FROM CODE | | 2. ACTION DATE | | | 3. TIME | | |
|---|---|---|---|---|---|---|---|
| | | MONTH | DAY | YEAR | | A.M. | P.M. |
| DCDC | | | | 2007 | 2100 | | |

| 4. NAME (LAST, FIRST, MIDDLE) | 5. DCDC NUMBER | 6. MOVE TO CODE | 7. DESTINATION | 8. REASON CODE | 9. REASON/SPECIAL INSTRUCTIONS | 10. CUSTODY STATUS |
|---|---|---|---|---|---|---|
| 1. HONESTY, KEVIN | 220-991 | 12 | D.C. JAIL | 67 | TRANSFER TO CDF | |
| 2. | | | | | | |
| Notes: | | | | | | |
| 3. | | | | | | |
| Notes: | | | | | | |
| 4. | | | | | | |
| Notes: | | | | | | |
| 5. | | | | | | |
| Notes: | | | | | | |
| 6. | | | | | | |
| Notes: | | | | | | |
| 7. | | | | | | |
| Notes: | | | | | | |
| 8. | | | | | | |
| Notes: | | | | | | |

RELEASED BY:

RECEIVED BY:

NUMBER RECEIVED:

NUMBER RELEASED:

RECEIVED | MONTH | DAY | YEAR |
| 7 | 1 | 07 |

AUTHORIZATION:

Steven A. Smith
Warden

IDPS-1696
Form E in7 Form

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

United State of America,

        v.

Kevin Honesty.

Criminal No. 07-155 (PLF)

### **ORDER**

       Upon consideration of Defendant Honesty's Motion to Hold Christopher Ivins in Contempt for His Wilful (sic) Violation of the July 18, 2007 Order Placing Defendant at the Central Treatment Facility, Christopher Ivins' Response to said Motion and Reply of Defendant Honesty, it is this _____ day of _____, 2007, ordered that Defendant Honesty's Motion is DENIED.

_____
PAUL L. FRIEDMAN

1740110.1