UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | Criminal No. 07-155 (PLF) |
| | : | |
| KEVIN HONESTY | : | |

REPLY TO RESPONDENT, CHRISTOPHER IVINS' RESPONSE TO DEFENDANT HONESTY'S MOTION TO HOLD CHRISTOPHER IVINS IN CONTEMPT FOR HIS WILFUL VIOLATION OF THE JULY 18, 2007 ORDER PLACING DEFENDANT AT THE CENTRAL TREATMENT FACILITY

Pursuant to the provisions of LCrR 47(d), defendant Kevin Honesty, by his attorney, Gary M. Sidell, hereby submits his reply to the Response submitted by Christopher Ivins ("IVINS") as follows:

1. On September 26, 2007, IVINS, by counsel in both this jurisdiction and the state of Arizona, filed his Response ("Response") to Mr. Honesty's motion that he be held in contempt. That motion was based on the sole ground that IVINS had violated this Honorable Court's Order of July 18, 2007 (Document #4)("ORDER") which directed that Mr. Honesty be ". . . hous[ed] at Central Treatment Facility until further Order of this Court." Document 10 @ page 1.  No such further order was ever issued.  Indeed, no such order was even sought by anyone at any time after July 18, 2007.

2. On July 18, 2007, at Mr. Honesty's initial appearance before this Honorable Court, the issue of his institutional placement was raised based on security concerns for his physical well-being and safety.  Those concerns arose once Mr. Honesty had been in custody at the D.C. Jail for

a period of time, and after his initial intake at that facility, and saw several people who posed a potential problem for his safety. [1]  With this I information, at counsel's request for his client's safety, this Honorable Court issued the ORDER moving Mr. Honesty to CTF.

      3.      For most of his Response, IVINS presents information which has nothing to do with the sole issue at hand: whether IVINS caused Mr. Honesty to be relocated from CTF to the Jail on August 1, 2007, in violation of the July 18, 2007 ORDER.  Indeed, most of not only the Response itself, but the attachments submitted as exhibits, are simply irrelevant to this narrow issue.  Moreover, Mr. Honesty submits that most of IVINS' submission contains characterizations about counsel which constitute "immaterial, impertinent, or scandalous matter."  See, F.R.C.P. 12(f). Furthermore, much of IVINS' submission constitutes "personal attacks and imputations of misconduct" by counsel. See, <u>United States v. Kouri-Perez, et al.</u>, 8 F. Supp. 2d 133, 134, 1998 U.S. Dist. LEXIS 8864 (DC PR 1998)(Sanctions imposed, pursuant to 28 U.S.C. §1927, on defense attorneys for personal attacks on assistant United States attorney ("AUSA") in criminal case in motion to modify order authorizing a foreign deposition.  Motion filed without any prior contact with AUSA seeking consent, but contained allegations about AUSA's family and ancestry which were irrelevant to ***any*** issues in case.)   Counsel neither moved Mr. Honesty, nor caused

---

[1] After receiving information from Mr. Honesty concerning several people he observed while in custody at the D.C. Jail who may have made certain erroneous, and potentially harmful, conclusions about him, and as disclosed to this Honorable Court at the initial appearance, it was counsel's decision to request that Mr. Honesty be moved out of the Jail and to CTF.  Counsel elected to err on the side of Mr. Honesty's safety in a prison custodial setting based upon not only the information he received from Mr. Honesty, but on his prior experience with the inadequate security provided to a former client, Mr. Quan Harris, who was killed while in custody at the Jail, notwithstanding protective custody.  IVINS contends that Mr. Honesty's institutional file from both the Jail and CTF had ". . . no evidence . . . that [he] was in need of protective custody at the . . . [Jail]."  See, Response @ page 2, fn 1.  Initial interviews of Mr. Honesty upon his arrival at either institution, and before he knew which other inmates were present, were not the basis on which he sought to be moved out of the Jail.  To suggest that someone checking off a box on a form eliminates Mr. Honesty's safety concerns recognized after completion of that form simply ignores the acquisition of this later information.  Mr. Honesty never requested "protective custody" (which may attract more attention from inmates than otherwise) and, more importantly, suggests that the absence of his concern, as expressed to counsel when they first met, then to this Honorable Court, would not find its way into his "institutional file."

him to be moved from CTF and to point the finger at counsel merely concedes that IVINS has no defense to the current motion.

4.      Similarly, for those attachments identified as Exhibit 1 and 3, most of those 72 pages fail to address the sole issue at hand: Mr. Honesty's improvident relocation from CTF on August 1, 2007, to the D.C. Jail, in violation of the ORDER.  In fact, much, but probably not all, of Mr. Honesty's institutional file has been included with this publicly available pleading.  Some of the irrelevant documents IVINS has elected to attach include his "Face Sheet No. 1" (Document 18-2 @ page 10) which contains Mr. Honesty's complete social security number, residence, driver's licensing jurisdiction and physical characteristics, notwithstanding the prohibition contained in LCvR 5.4(f)(1).  Similarly, IVINS has included a copy of a Writ Ad Testificandum with the same proscribed information.  See, Document 18-2 @ page 12.  See also, Document 18-2 @ pages 13, 29 (defendant's mother's information), 33 and 38 (same).  In fact, four (4) of the five (5) pages of the Don Paul affidavit, Exhibit 1, contain characterizations of counsel, not Mr. Honesty, and are simply irrelevant to the simple issue at hand.[2],[3]

---

[2] IVINS acknowledges that Mr. Honesty's institutional file contained a "priority transfer memorandum, dated July 20, 2007 providing that Defendant Honesty be housed at CTF. . . until further notice from the office of case management."  Document 18-2 @ page 5, paragraph 14.  The "memorandum" to which this Affidavit refers, Document 18-2 @ page 23, relies upon an ". . . order of the ***Superior Court*** of the District of Columbia. . . ." (Emphasis added).

[3] The artfully worded Paul Affidavit, Exhibit 1 to the IVINS response, states that there is no July 18, 2007 Order contained in Mr. Honesty's institutional file.  See, paragraph 13: "The only court orders contained in Defendant Honesty's ***current*** institutional file. . . ."  Counsel understands that it is the routine practice for the United States District Court Clerk's Office to forward, by facsimile, an order such as the July 18, 2007 Order in this case to the D.C. Jail Records Office.  Indeed, counsel understands that this process was employed in this case and that the ORDER was sent by facsimile to the D.C. Jail Records Office.  Moreover, counsel further understands that the D.C. Jail Records Office places such a custody order it receives in this manner into an inmate's institutional file.  An inmate has one, and only one, institutional file which is maintained in the same institution as the inmate.  Hence, Mr. Honesty's complete institutional file should contain the ORDER at issue, as placed there by the Jail Records Office, absent a failure to follow institutional procedure by the D.C. Jail or CTF, or a selective review and/or provision of that file.

5. As with the Don Paul Affidavit, Exhibit 1 and its attachments, the IVINS' affidavit, Exhibit 3, is mainly devoted to characterizations of counsel which are irrelevant to Mr. Honesty's relocation on August 1, 2007. Again, four (4) of the five (5) pages of the IVINS affidavit do not even address Mr. Honesty. Rather, IVINS attempts to make counsel the issue as an apparent justification for his relocation of Mr. Honesty. [4] However, it is no defense to contempt to challenge the validity of the Court's ORDER. See, Motion @ paragraph 9, pages 3-4, and cases cited. Moreover, Mr. Honesty submits that the characterizations contained in the IVINS affidavit, Exhibit 3, are simply self-serving, if not also immaterial, impertinent and scandalous. See, Kouri-Perez, supra. Mr. Honesty submits that they are nothing more than an effort to shift the focus from the finite issue raised in his motion. As such, Mr. Honesty will not respond to IVINS' irrelevant ad hominem attacks.[5]

6. In sum, IVINS presents no basis to avoid a finding of contempt for relocating Mr. Honesty from CTF to the D.C. Jail on August 1, 2007, in violation of the ORDER. This transfer placed Mr. Honesty unnecessarily in jeopardy of his safety at the Jail. The fact that Mr. Honesty

---

[4] For instance, paragraph 7 at page 3 of 32, Document 18-4, refers to a July 24, 2007 allegation that counsel intentionally impeded emergency medical personnel who were removing a CTF staff member from that institution. Such an allegation, under oath, is irrelevant to the issue of moving Mr. Honesty in violation of the ORDER. More interesting is the fact that counsel was ***not at CTF*** on July 24, 2007, nor did he engage in any of the conduct alleged in this paragraph on any date.

[5] IVINS makes much of the "not legal materials of any nature," e.g., a novel and magazine, that he alleges were possessed by counsel as his basis for blacklisting counsel from CTF and, therefore, relocating Mr. Honesty to the Jail. See, Document 18-4 @ page 4, paragraph 8, et seq. As justification, IVINS relies upon CTF Corporate and Facility Policy 16-2. However, this document, as appended to Exhibit 3, as attachment B @ pages 12-20, addresses only "Attorney Equipment." This policy provision, by its terms, is limited to lap top computers, audio tapes and recorders. Nowhere in this entire policy statement is there any reference to, or definition of, what IVINS refers to as prohibited "non-legal material." Indeed, on July 31, 2007, counsel simply attempted, repeatedly yet unsuccessfully, to obtain ***any*** basis for CTF's preclusion of the D.C. Bar magazine, a legal periodical, with its main article concerning the recent Circuit opinion invalidating D.C's gun law, and of potential value to Mr. Honesty's case. The only basis that IVINS provided was "Because I said so" without reference to any written limitation. The explanation is simple: there are no prohibitions on written materials other than the ad hoc, and unfettered, decisions made by CTF staff. Counsel notes that another item he possessed on July 31, and which was determined arbitrarily to be "contraband" by CTF staff subject to stowage in a locker, was his emergency asthma medication inhaler. As with "not legal materials," nothing has been provided now, or then, to justify restriction of possession of emergency medications.

was transferred back to CTF the next day, and without physical injury, does not lessen, or excuse, the violation.  Counsel's request that Mr. Honesty be moved out of a custodial location, D.C. Jail, where there was the real possibility of serious if not permanent harm.  As this Honorable Court recently noted at Mr. Honesty's sentencing, sometimes things may go "very badly wrong," as with the potential for harm to the innocent victims involved in Mr. Honesty's case.  Mr. Honesty's original custodial location at the D.C. Jail presented another such possibility that IVINS had no right to change unilaterally without seeking judicial authorization.  The July 18, 2007 Order was clear, its terms were violated and no defense has been offered.  IVINS' attacks on counsel do not constitute a recognized defense to contempt and his 80 plus pages of his Response has no authority to support it.[6]   Hence, Mr. Honesty submits that no defense has been presented sufficient to warrant dismissal of his motion.  A federal court order must be obeyed or changed, not ignored when convenient, especially without an emergency.  In this case, there was no emergency to move MR. Honesty to the Jail and there was no effort made to change the ORDER issued for his safety.  As a direct result of this violation, further court hearings were necessary before Mr. Honesty's case could be concluded, thus inconveniencing this Honorable Court and the parties to this case.  Mr. Honesty submits that IVINS' violation of this federal court ORDER merits a sanction.

                                          Respectfully submitted,

                                          _____/s/_____
                                          Gary M. Sidell
                                          1776 K Street, NW

---

[6] Similarly, counsel submits that IVINS request for attorney's fees is factually and legally unsupported, as may be seen from the absence of all authority for that request.  It is curious that IVINS contends that Mr. Honesty's motion is "lacking in any legal authority."  Response @ page 8, paragraph II. D.  In fact, if anyone is unnecessarily and vexatiously prolonging this litigation, Mr. Honesty submits that it is IVINS for the reasons included in paragraph 6.  See also, 28 U.S.C. § 1927; Kouri-Perez, supra.

Suite 800
Washington, D.C. 20006
202-783-0060
D.C. Bar No. 961847

CERTIFICATE OF SERVICE

I hereby certify that I have caused this pleading to be served upon all parties by ECF this 29th day of September, 2007.

_____/s/_____
Gary M. Sidell